**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**

| | |
|---|---|
| LAUREN ANDERSON, WALID ANTONIOS, FRED BALSAM, and CALVIN WILEY, Individually and on Behalf of All Others Similarly Situated,<br><br>             Plaintiffs<br><br>      v.<br><br>NISSAN NORTH AMERICA, INC., and NISSAN MOTOR CO., LTD.<br><br>             Defendants | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiffs Lauren Anderson, Walid Antonios, Fred Balsam, and Calvin Wiley, ("Plaintiffs") individually and on behalf of all others similarly situated, bring this action against Nissan North America, Inc. and Nissan Motor Co., Ltd. ("Defendants" or "Nissan") and allege as follows:

## I.      INTRODUCTION

1.      Plaintiffs bring this action individually and on behalf of all similarly situated persons ("Class Members") who purchased or leased any Model Year ("MY") 2013 through 2017 Nissan Pathfinder or 2014 through 2017 INFINITI QX60 vehicle in the United States ("Class Vehicles") that was designed, manufactured, distributed, marketed, sold or leased by Defendants.

2.      Beginning in 2013, if not before, Defendants knew that the Class Vehicles contain one or more design and/or manufacturing defects that can cause their radiator cooling fans to malfunction and fail ("Cooling Fan Defect"). The Cooling Fan Defect causes a loud rattling sound in the front of the engine and can result in overheating and ultimately engine failure—leaving the vehicle occupants stranded and creating unreasonable safety risks.[1]

_____

[1] The INFINITI QX60 is the luxury "sister" vehicle of the Pathfinder and, on information and belief, was equipped with the same defective radiator cooling fan.

3.     In addition to the safety hazards and inconvenience caused by the Cooling Fan Defect, repair costs can exceed $1,000.  The Class Vehicles thus differ materially from the product Nissan intended to sell.  Nissan intended to produce vehicles with radiator fans that function reliably, allowing the engine to remain at a safe operating temperature.  Instead, Nissan produced vehicles with cooling fans that are unable to serve their intended purpose and cause the Class Vehicles' engines to overheat.

4.     Nissan concealed the Cooling Fan Defect to encourage Plaintiffs and Class Members to purchase the Class Vehicles.  Plaintiffs are informed and believe, and based thereon allege, that Defendants knew the Class Vehicles were defective and not fit for their intended purpose of providing consumers with safe and reliable transportation at the time of sale and thereafter. Defendants have actively concealed the true nature and extent of the Cooling Fan Defect from Plaintiffs and the other Class Members, and failed to disclose it to them, at the time of purchase or lease.  Had Plaintiffs and prospective Class Members known about the Cooling Fan Defect, they would not have purchased the Class Vehicles or would have paid less for them.

5.     Plaintiffs are informed and believe, and based thereon allege, that despite notice of the Cooling Fan Defect from, among other things, pre-production testing, numerous consumer complaints, warranty data, dealership repair orders and prior experience with earlier model vehicles with the same or substantially similar radiator fans, Defendants have not recalled the Class Vehicles to repair the Cooling Fan Defect, have not offered their customers a suitable repair or replacement free of charge, and have not offered to reimburse all Class Vehicle owners and leaseholders the costs they incurred relating to diagnosing and repairing the Cooling Fan Defect.

6.     Plaintiffs are further informed and believe, and based thereon allege, that despite being on notice of the Cooling Fan Defect, Defendants regularly deny the existence of the Cooling Fan Defect until after consumers' (3) years/36,000 miles new vehicle bumper-to bumper warranty coverage has expired or require payment to repair the Cooling Fan Defect even while the Class Vehicles are under warranty.

## II.     PARTIES

### A.     Plaintiffs

### Lauren Anderson (Massachusetts)

7.     Plaintiff Lauren Anderson is a Massachusetts resident who lives in Andover, Massachusetts.  Ms. Anderson purchased a new MY 2017 Nissan Pathfinder in or around January 2017 from Commonwealth Motors, an authorized Nissan dealer in Lawrence, Massachusetts ("Commonwealth").  Prior to purchase, Ms. Anderson spoke with the dealer sales representative about the vehicle, inspected the Monroney sticker posted on the vehicle by Nissan and test drove the vehicle.  Ms. Anderson was never informed by the dealer sales representative that the vehicle suffered from the Cooling Fan Defect and relied upon this fact in purchasing the vehicle.  Had Ms. Anderson been informed that her vehicle suffered from the Cooling Fan Defect, she would not have purchased it.  Ms. Anderson purchased her vehicle primarily for personal, family or household purposes.  Ms. Anderson's vehicle was designed, manufactured, sold, distributed, advertised, marketed and warranted by Nissan.

8.     Ms. Anderson's Pathfinder first exhibited a rattling sound caused by the Cooling Fan Defect in January 2023.  Shortly thereafter on or about January 14, 2023, Ms. Anderson brought her vehicle to Commonwealth and was charged $1,251.75 to replace her radiator cooling fan assembly.

9.     At all times, Ms. Anderson has driven her vehicle in a foreseeable manner and in the manner in which it was intended to be used.

### Fred Balsam (Pennsylvania)

10.     Plaintiff Fred Balsam is a Maryland resident who lives in Westminster, Maryland.  In about February 2020, Mr. Balsam purchased a used MY 2017 Nissan Pathfinder from Fred Beans Nissan in Doylestown, Pennsylvania.  Prior to purchase, Mr. Balsam spoke with the sales representative about the vehicle, inspected the sticker posted on the vehicle, and test drove the vehicle.  Mr. Balsam was never informed by the dealer sales representative that the vehicle suffered from the Cooling Fan Defect and relied upon this fact in purchasing the vehicle.  Had Mr. Balsam been informed that his vehicle suffered from the Cooling Fan Defect, he would not have purchased

it. Mr. Balsam's vehicle was designed, manufactured, distributed, advertised, marketed and warranted by Nissan.

11.     Mr. Balsam's Pathfinder began to exhibit the symptoms of the Cooling Fan Defect in August 2020. Mr. Balsam promptly purchased a replacement cooling fan assembly from 1A Auto, Inc. and had it installed by Tom's Auto repair in Hanover, Pennsylvania on about August 28, 2020, at a total cost (parts and labor) of $356.05.

12.     At all times, Mr. Balsam has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**Calvin Wiley (Maryland)**

13.     Plaintiff Calvin Wiley is a Maryland resident who lives in Baltimore, Maryland. Mr. Wiley purchased a new MY 2017 Nissan Pathfinder in October 2017 from the Antwerpen Nissan dealership in Baltimore, Maryland ("Antwerpen"). Prior to purchase, Mr. Wiley spoke with the dealer sales representative about the vehicle, inspected the Monroney sticker posted on the vehicle by Nissan, and test drove the vehicle. Mr. Wiley was never informed by the dealer sales representative that the vehicle suffered from the Cooling Fan Defect and relied upon this fact in purchasing the vehicle. Had Mr. Wiley been informed that his vehicle suffered from the Cooling Fan Defect, he would not have purchased it. Mr. Wiley's vehicle was designed, manufactured, distributed, advertised, marketed and warranted by Nissan.

14.     Mr. Wiley's Pathfinder started exhibiting symptoms of the Cooling Fan Defect in the beginning of May 2022. About a week after the symptoms began, he took his vehicle to Antwerpen and was charged $969.03 to purchase a new cooling fan assembly and have it installed.

15.     At all times, Mr. Wiley has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**Walid Antonios (Ohio)**

16.     Plaintiff Walid Antonios is an Ohio resident who lives in Hillard, Ohio. Mr. Antonios purchased a new MY 2017 Nissan Pathfinder in about May 2017 from Goreville Nissan in Grove City, Ohio. Prior to purchase, Mr. Antonios spoke with the dealer sales representative about the vehicle, inspected the Monroney sticker posted on the vehicle by Nissan, and test drove the vehicle.

Mr. Antonios was never informed by the dealer sales representative that the vehicle suffered from the Cooling Fan Defect and relied upon this fact in purchasing the vehicle. Had Mr. Antonios been informed that his vehicle suffered from the Cooling Fan Defect, he would not have purchased it. Mr. Antonios's vehicle was designed, manufactured, distributed, advertised, marketed and warranted by Nissan.

17.     Mr. Antonios's Pathfinder first began to exhibit the symptoms of the Cooling Fan Defect in mid-2021, making a rattling sound when he turned on the vehicle. He promptly took the vehicle to an authorized Nissan dealer and was charged over $1,000 to replace his radiator cooling fan assembly.

18.     At all times, Mr. Antonios has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

B.     **Defendants**

**Nissan North America, Inc.**

19.     Defendant Nissan North America, Inc. ("NNA") is a California corporation with its principal place of business located at One Nissan Way, Franklin, Tennessee and doing business in Tennessee and throughout the United States.

**Nissan Motor Co. Ltd.**

20.     Founded in 1933 and headquartered in Yokohama, Japan, Defendant Nissan Motor Co., Ltd. ("NML") is a corporation organized under the laws of Japan. NML manufactures and distributes automobiles and related parts. It also provides financing services. NML delivers a comprehensive range of products under various brands that are manufactured in Japan, the United States, Mexico, the United Kingdom and other countries. NML is the parent and 100% owner of NNA.

21.     At all relevant times, NNA and NML were engaged in the business of designing, manufacturing, marketing, distributing, and selling automobiles, including but not limited to the Class Vehicles, and other motor vehicles and motor vehicle components, in Tennessee and throughout the United States.

22.     Whenever, in this Complaint, reference is made to any act, deed or conduct of Defendants, the allegation means that Defendants engaged in the act, deed, or conduct by or through one or more of their officers, directors, agents, employees or representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of Defendants.

## III.     <u>JURISDICTION</u>

23.     This is a class action.

24.     This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  The aggregated claims of the individual class members exceed the sum value of $5,000,000, exclusive of interests and costs.  This court also has federal question jurisdiction over this action under 28 U.S.C. § 1331 because Plaintiffs' claims under the Magnuson-Moss Act arise under federal law.  This Court has personal jurisdiction over NNA because its principal place of business is in Franklin, Tennessee, and Defendants' otherwise have sufficient minimum contacts with Tennessee, and/or otherwise intentionally avails themselves of the markets within Tennessee, through the promotion, sale, marketing and distribution of their vehicles in Tennessee, so as to render the exercise of jurisdiction by this Court proper and necessary.

## IV.     <u>VENUE</u>

25.     Venue is proper pursuant to 28 U.S.C. § 1391, because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred within the Middle District of Tennessee.

## V.     <u>NISSAN'S KNOWLEDGE OF THE COOLING FAN DEFECT</u>

26.     For years, Nissan has designed, manufactured, distributed, sold, and leased the Class Vehicles.  Upon information and belief, Defendants have sold, directly or indirectly through dealers and other retail outlets, many thousands of Class Vehicles nationwide.  On information and belief, the only method Nissan makes available for the purchase of Class Vehicles is through its nationwide network of authorized dealers.

27.     Plaintiffs and Class Members are intended third-party beneficiaries of contracts between Nissan and its dealerships; specifically, they are the intended beneficiaries of Nissan's

warranties. The dealerships were not intended to be the ultimate consumers of the Class Vehicles, and the warranty agreements were designed for and intended to benefit the ultimate consumers only.

28.     The Cooling Fan Defect causes the Class Vehicles to unexpectedly malfunction and exhibit a loud squealing, rattling, or clacking sound that is accompanied by radiator cooling fan failure. The Cooling Fan Defect renders the Nissan Vehicles unsafe and unreliable and can cause engine failure. It presents a safety hazard that is unreasonably dangerous to consumers because of the impact of the Defect on driver's ability operate the Class Vehicle as expected.

29.     Plaintiffs are informed and believe, and based thereon allege, that, prior to placing the Class Vehicles in the stream of commerce, Nissan became aware of the Cooling Fan Defect through sources not available to Plaintiffs and Class Members, in its exclusive control and/or superior knowledge, including, but not limited to, pre-production testing, pre-production design failure mode and analysis data, production design failure mode and analysis data, early consumer complaints made exclusively to Nissan's network of dealers and directly to Nissan, aggregate warranty data compiled from Nissan's network of dealers, testing conducted by Nissan in response to consumer complaints, and repair order and parts data received by Nissan from Nissan's network of dealers. On information and belief, Nissan actively monitors and records consumer complaints made to Nissan's network of dealers as well as all service and repair work done related to the Cooling Fan Defect at its network of dealers.

30.     Nissan actively monitors and records all in-warranty repair work performed by its dealers which is fed to Nissan and meticulously tracked on a VIN-level basis. Nissan engineers track warranty trends using multiple metrics and are aware of even slight upticks in warranty rates. On information and belief, the internal triggers set by Nissan for investigation of claims rates are very low. James ("Jim") Blenkarn, Nissan's Senior Manager, Systems Quality Improvement, has publicly confirmed Plaintiffs' allegations. Blenkarn, in response to the question "On how Nissan monitors quality after a vehicle is launched, stated:

> For the first six months, sometimes longer, of every new product, we
> have a team that focuses strictly on the product and examines every

claim that comes in for that vehicle model.  Our engineers have to target reporting if it is a 0.5 incident rate.  That's our threshold.[2]

31.     On information and belief, the incident rate of radiator cooling fan failure caused by the Cooling Fan Defect significantly exceeds Nissan's .5 percent trigger.

32.     Nissan's attempt to address the Cooling Fan Defect through a Technical Service Bulletin ("TSB") issued by Nissan to its dealers (but not consumers) on September 6, 2017, shows that it was aware of the Cooling Fan Defect.  **Ex. A.**

33.     TSB NTB17-100 provides Nissan dealers with a service procedure to replace defective cooling fans in the Class Vehicles.  On information and belief, this TSB was issued due to the high volume of cooling fan repairs of which Defendants became aware prior to its issuance through, among other things, monitoring of warranty data and consumer complaints made directly to Nissan. Although this TSB was not issued until after some Plaintiffs purchased their vehicles, it demonstrates that Defendants were aware of the Cooling Fan Defect years earlier.

34.     Creating a TSB is a lengthy process that requires Nissan to identify the cause of a service problem, such as the Cooling Fan Defect, by gathering information from dealers, customer complaints made directly to Nissan or through third party complaint sources that Nissan monitors like NHTSA's website or private car-related websites; conduct cause analysis and testing; develop a solution through additional testing and analysis; weigh the costs and benefits of providing guidance to its dealers; and, ultimately, publishing the TSB to dealers.  This accretion of knowledge can take years.

35.     On information and belief, Defendants issued the above TSB to address problems being caused by the Cooling Fan Defect.  Defendants had and have a duty to disclose the Cooling Fan Defect and the associated repair costs to Class Vehicle owners, among other reasons, because the Defect poses an unreasonable safety hazard; because Defendants had and have exclusive knowledge and/or access to material facts about the Class Vehicles that were and are not known

---

[2] "5 Minutes with… Jim Blenkarn, senior manager, systems quality improvement, Nissan North America" Richard Truett, April 16, 2018 *Automotive News*. http://www.autonews.com/article/20180416/RETAIL05/180419990/5-minutes-with-jim-blenkarn-senior-manager-systems-quality (last visited March 20, 2023).

to or reasonably discoverable by Plaintiffs and other Class Members; and, because Defendants have actively concealed the Cooling Fan Defect from their customers.  Further, because the above TSBs was not issued as part of a formal recall, it was much more likely to be overlooked by dealers, and unknown to consumers.[3]

## V.    EXAMPLE CONSUMER COMPLAINTS

36.    Hundreds, if not thousands, of purchasers and lessees of the Class Vehicles have experienced the Cooling Fan Defect.

37.    Nissan monitors consumer complaints made to the National Highway Traffic Safety Administration ("NHTSA").  Federal law requires automakers like Nissan to be in close contact with the NHTSA regarding potential auto defects, including imposing a legal requirement (backed by criminal penalties) compelling the confidential disclosure of defects and related data by automakers to the NHTSA, including field reports, customer complaints, and warranty data.  *See* Transportation Recall Enhancement, Accountability and Documentation ("TREAD") Act, Pub. L. No. 106-414, 114 Stat.1800 (Nov. 1, 2000).

38.    Automakers have a legal obligation to identify and report emerging safety-related defects to the NHTSA under the TREAD Act's Early Warning Report requirements.  *Id.*  Similarly, automakers monitor the NHTSA database for consumer complaints regarding their automobiles as part of their ongoing obligation to identify potential defects in their vehicles, including safety-related defects.  *Id.*  Thus, Nissan knew or should have known of the many complaints about the Cooling Fan Defect logged by the NHTSA Office of Defect Investigation (ODI), and the content, consistency, and large number of those complaints alerted, or should have alerted, Nissan to the Cooling Fan Defect.

---

[3] When a vehicle identification number is entered into a dealer computer, the dealer is automatically instructed to perform applicable recalls.  Dealers generally search for TSBs based on customer complaints, which requires them to often sift through multiple TSBs and attempt to interpret which, if any, are applicable.

39.     The following example complaints filed by consumers with the NHTSA and which continue to accrue demonstrate that the Cooling Fan Defect is a widespread, dangerous and unresolved problem that has continued unabated from one model year to the next[4]:

## MY2014 Nissan Pathfinder

**NHTSA ID Number:** 11319818
**Complaint Date:** March 31, 2020
**Incident Date** March 31, 2020
**Summary of Complaint:** 2014 NISSAN PATHFINDER 44,424 MILES. PART 621-586 RAD FAN ASSEMBLY/COOKING FAN NEEDS TO BE REPLACED. VEHICLE MAKES LOUD ROARING NOISE WHEN THE AIR CONDITIONER UNIT IS TURNED ON. VEHICLE SHAKES WHILE IN MOTION ON CITY AND HIGHWAY STREETS.

**NHTSA ID Number:** 11217023
**Complaint Date:** May 13, 2019
**Incident Date** May 22, 2019
**Summary of Complaint:** MY VEHICLE WILL MAKE STARTLING RATTLING SOUNDS UNDER THE HOOD WHENEVER THE HEAT OR AIR CONDITIONING IS ON WHETHER THE CAR IS IDLE OR IN MOTION. WHENEVER THIS OCCURS, THE VEHICLE ALSO HESITATES WHEN ACCELERATING AS IF IT WILL CUT OFF.

## MY 2015 Nissan Pathfinder

**NHTSA ID Number:** 11444836
**Complaint Date:** December 23, 2021
**Incident Date** December 16, 2021
**Summary of Complaint**
I BOUGHT MY 2015 PATHFINDER NEW IN 2016. LOVE THE VEHICLE BUT I AM DISAPPOINTED IN HOW QUICKLY IT STARTED TO "FALL APART". I HAD A ALTIMA WITH OVER 200 000 MILES WITHOUT A SINGLE PART BREAKING ON IT. I BOUGHT MY PATHFINDER BASED ON THE PREMISE THAT ALL NISSAN PRODUCTS ARE AS GOOD AS MY ALTIMA. I HAVE ONLY 52000 MILES ON MY PATHFINDER NOW AND I HAVE A DEFECTIVE COOLING FAN MAKING A TERRIBLE NOISE. THERE IS NO SUPPORT FOR MY PATHFINDER ANY LONGER FROM NISSAN AND THE COST OF REPLACING THE FAN IS WELL OVER $1400. I EXPECTED MORE FROM NISSAN AND MY NEW VEHICLE FOR NEXT YEAR WILL BE BASED ON MY EXPERIENCE WITH NISSAN. I AM NOT SURE I WILL BE DRIVING A NISSAN NEXT YEAR. NISSAN IS CHEEPING OUT ON PRODUCT THAT THEY USE FOR THEIR VEHICLES NOW, IT'S TOO BAD, THEY USED TO HAVE VERY WELL BUILT PRODUCTS.

**NHTSA ID Number:** 11279261
**Complaint Date:** November 10, 2019
**Incident Date** October 28, 2019

---

[4] Spelling and grammatical mistakes reproduced as in the original.

**Summary of Complaint:** IN OCTOBER 2019, OUR CAR STARTED MAKING A RATTLING SOUND IN THE FRONT OF THE ENGINE. MY HUSBAND DISCOVERED THAT IT STOPPED WHEN THE AIR SYSTEM (HEATING OR COOLING) WAS TURNED OFF. WE TOOK IT IN TO A MECHANIC AND HE STATED IT SOUNDED LIKE THE COOLING FAN ASSEMBLY. WHEN WE FIRST BOUGHT THE CAR (2 YEARS AGO- USED), THE FIRST WEEK WE HAD IT THE COOLING FAN ASSEMBLY WENT BAD AND HAD TO BE REPLACED. LUCKILY THE DEALER WE BOUGHT IT FROM REPLACED IT WITHOUT CHARGING US. WE WERE SURPRISED TO FIND OUT THE SAME SYSTEM IS FAILING AFTER ONLY 44,000 MILES. IT FAILED AT 33,000 MILES THE FIRST TIME. IT WAS RECOMMENDED TO NOT DRIVE THE CAR FAR DISTANCES WITH THE AIR SYSTEM ON AS THEY ARE UNSURE WHAT COULD HAPPEN TO THE ASSEMBLY OR ITS EFFECT ON THE ENGINE IF IT GETS WORSE. THEY RECOMMEND REPLACING IT AGAIN. WE WERE SURPRISED THIS PIECE SHOULD FAIL TWICE IN THE 77,000 MILES ON THE CAR. NOT CONFIDENT THAT REPLACING IT IS THE ANSWER AS ONE WOULD EXPECT IT TO FAIL AGAIN SINCE THERE HAS NOT BEEN A RECALL ON THE PART.

**NHTSA ID Number:** 11282462
**Complaint Date:** November 26, 2019
**Incident Date** November 25, 2019
**Summary of Complaint**: WHEN THE AC OR HEAT IS TURNED ON THE CAR STARTS TO SHAKE AND OR VIBRATE. THE FRONT END OF THE CAR SOUNDS VERY LOUD LIKE A LAWNMOWER IS JUST RIGHT IN FRONT OF YOU. WHEN YOU OPEN UP THE HOOD YOU CAN SEE THAT THE COOLING FAN IN THE FRONT OF THE VEHICLE IS RATTLING WHEN THE AC OR THE HEAT IS TURNED OFF BUT THE FAN ENGAGES TO COOL THE ENGINE IT MAKE THE SAME SOUND. CAR IS AT 68K MILES REPAIR FOR COOLING FAN IS VERY COSTLY AND APPARENTLY COMMON ON THE PATHFINDERS

**NHTSA ID Number:** 11241363
**Complaint Date**: August 2, 2019
**Incident Date** April 5, 2019
**Summary of Complaint**: THE COOLING FAN STARTED MAKING A TERRIBLE NOISE AT AROUND 48,000 MILES. THE NOISE WOULD HAPPEN WHEN THE FAN KICKED ON. THE FAN WAS STARTING TO SEPARATE FROM THE BEARING. I CALLED NISSAN AND THEY WOULDN'T COVER IT. I TOLD THEM MANY OTHER NISSANS ARE HAVING THE SAME ISSUE. THEY SAID THEY WOULD PUT MY COMPLAINT ON FILE. I HAD TO PAY FOR A NEW FAN OUT OF POCKET.

## MY2016 Nissan Pathfinder
**NHTSA ID Number:** 11307419
**Complaint Date:** February 6, 2020
**Incident Date** January 30, 2020
WHEN I TURNED ON MY AC, IT SOUNDS LIKE A HELICOPTER. I WAS TOLD IT'S THE COOLING FAN AND THAT IT'LL COST OVER $1000 TO FIX. THIS SEEMS TO BE A COMMON ISSUE WITH THESE CARS. MY CAR HAS 80,000 MILES. MY 2007 CAMRY HAS OVER 290,000 AND NEVER HAD THIS ISSUE. I ALSO OWNED A HONDA PILOT WITH OVER 300,000 AND NEVER AN ISSUE

**NHTSA ID Number:** 11173603

**Complaint Date:** February 1, 2019
**Incident Date** January 27, 2019
**Vehicle Identification Number** 5N1AR2MN4GC\*\*\*\*
THE CAR STARTED MAKING A SOUND UNDER THE HOOD. THE NOISE WOULD STOP WHENEVER I TURNED THE CLIMATE CONTROL OFF. I TOOK IT TO GET CHECK OUT AND IT IS THE COOLING FAN. APPARENTLY THERE ARE TWO FANS. WHILE I PLACED AN ORDER TO REPLACE THE PART, THE OTHER FAN HAS STARTED MAKING THE SAME NOISE. THE CAR IS LESS THAN 3 YEARS OLD WITH 43K MILES. I HAVE HAD OTHER NISSANS FOR MUCH LONGER AND A LOT MORE MILES AND THIS HAS NEVER HAPPENED. THIS IS NOT THE FIRST REVIEW I READ ABOUT THIS ISSUE FOR THIS MAKE, MODEL AND YEAR. SOMETHING THAT DEFINITELY NEEDS TO BE REVIEWED BY NISSAN.

**NHTSA ID Number:** 11209388
**Complaint Date:** May 22, 2019
**Incident Date** May 16, 2019
**Summary of Complaint**: A RATTLE BEGAN IN THE FRONT OF THE CAR NEAR THE ENGINE. AFTER TAKING THE CAR TO NISSAN FOR AN OIL CHANGE, THEY NOTICED THAT THE COOLANT FAN WAS GOING BAD AND SHAKING. I WAS TOLD IF NOT REPLACED, IT WOULD DAMAGE THE TRANSMISSION FAN. I WAS QUOTED $873 TO GET A NEW FAN ON A CAR THAT IS LESS THAN 3 YEARS OLD THAT HAS NEVER BEEN INVOLVED IN ANY ACCIDENT TO WHICH COULD HAVE CAUSED THIS.

**NHTSA ID Number:** 11300141
**Complaint Date**: January 17, 2020
**Incident Date** January 13, 2020
**Summary of Complaint**: WHILE DRIVING A LOUD FAN NOISE COULD BE HEARD COMING FROM THE ENGINE SHAKING THE CAR. IT HAS BEEN DETERMINED THAT THE RADIATOR COOLING FAN HAS GONE BAD, WITH ONLY 60,000 MILES CURRENTLY ON THE VEHICLE.

## MY2017 Nissan Pathfinder

**NHTSA ID:** 11453791
**Complaint Date:** February 24, 2022
**Incident Date:** February 24, 2022
**Summary of Complaint**: The contact owns a 2017 Nissan Pathfinder. The contact stated that while driving at an undisclosed speed, there was a rattling sound coming from the front end of the vehicle while the air conditioner was activated. The vehicle was taken to the dealer and diagnosed with bearing wear, causing the fan assembly failure. The contact was informed that the fan assembly needed to be replaced and that the fan blades could detach, causing the radiator to leak and the engine to fail. The vehicle was not repaired. The manufacturer was not made aware of the failure. The failure mileage was approximately 40,000.

**NHTSA ID:** 11451248
**Complaint Date:** February 9, 2022
**Incident Date:** January 3, 2022

**Summary of Complaint:** 2013 – 2017 PATHFINDER; RADIATOR SHROUD AND COOLING HAD FAULTY FAN ASSEMBLY REPLACEMENT PROCEDURE. IT RATTLES AND POTENTIAL OVERHEAT IF FAN STOPS WORKING. THIS STARTING RATTLING AT 37K MILES. APPLIED VEHICLES: 2013 – 2017 PATHFINDER (R52) SERVICE INFORMATION WHEN REPLACING THE RADIATOR SHROUD AND COOLING FAN ASSEMBLY FOR ANY REASON, THE ENGINE COOLANT, AIR CLEANER CASE, AND AIR DUCT DOES NOT NEED TO BE REMOVED AS PART OF THE PROCEDURE. USE THIS SERVICE PROCEDURE (IN PLACE OF THE ESM) AND THE CLAIMS INFORMATION IN THIS BULLETIN. THE ESM WILL BE UPDATED AT A LATER DATE.

**NHTSA ID Number:** 11394633
**Complaint Date:** February 4, 2021
**Incident Date:** February 1, 2021
**Summary of Complaint:** READING FORUMS AND DOING RESEARCH HAS BROUGHT ME TO THE CONCLUSION THAT NISAN IS BUYING AND HAS BEEN BUYING FAULTY RADIATOR FANS FOR YEARS. MY WIFE DOES NOTHING BUT DRIVE TO AND FROM WORK, AVERAGING AROUND 10K MILES A YEAR ON HER PATHFINDER UNDER NORMAL DRIVING CONDITIONS AND WE ARE BEING ASKED TO REPLACE A FAN THAT HAS MYSTERIOUSLY JUST STARTED MAKING ALL KINDS OF NOISE. NOT ONLY IS THIS A PROBLEM BUT IT'S CAUSING CONSUMERS TO SPEND UPWARDS OF $1000 TO REPLACE THIS. I HAVE RECENTLY FOUND A PATHFINDER FORUM WITH WELL OVER 450 RESULTS RELATED TO THIS PARTICULAR ITEM ONLY. OBVIOUSLY, THIS IS NOT COVERED UNDER NORMAL DRIVE TRAIN WARRANTY SO THIS IS COMING OUT OF CONSUMER POCKETS. THIS ISN'T FAIR TO ME OR ANYONE ELSE THAT I HAVE SPOKEN TO. WHY WOULD THIS FAN JUST GO OUT FOR NO REASON OTHER THAN IT'S A FAULTY FAN WITH POOR WORKMANSHIP ASSOCIATED WITH THE PRODUCT. NISSAN DEALERSHIPS ARE MAKING A KILLING, $400 TO $600 JUST IN LABOR WITH ALL OF THESE PROBLEMS. IF YOU ALL GO TO PATHFINDERTALK.COM AND SEARCH RADIATOR FAN, YOU WILL FIND ALL OF THE PROBLEMS ASSOCIATED WITH THE FANS. IT'S FAULTY, IT'S DANGEROUS AND SHOULD BE NISSAN SHOULD HAVE TO FLIP THE BILL FOR THIS IN THE FUTURE AND MAYBE THEY WILL THINK ABOUT THIS BEFORE THEY DECIDE TO BUY CHEAP MATERIALS AGAIN.

**NHTSA ID Number:** 11385507
**Complaint Date:** December 29, 2020
**Incident Date:** December 28, 2020
**Summary of Complaint:** LOUD NOISE STARTED WHEN ENGINE WAS TURNED ON AND ON IDLE. WAS TOLD THAT IT WAS THE RADIATOR BLADE HITTING SOMETHING. WHAT OR WHY THIS HAPPENED THE LOCAL DEALER HAS NO CLUE OR EXPLANATION OTHER THEN "IT JUST HAPPENS ON SOME NISSANS" THE COST TO REPLACE THE RADIATOR FAN AND SHROUD IS ABOUT US$1000 ON A CAR THAT IS 39 MTHS OLD! SEEMS THIS HAPPENS TO ENOUGH NISSANS THAT THE DEALER HAS SEEN IT VARIOUS TIMES.

40.    Although Defendants were aware of the widespread nature of the Cooling Fan Defect in the Class Vehicles, and the grave safety risk posed by it, Defendants took no steps to notify customers of the Cooling Fan Defect or to provide them with any relief.

41. Customers have reported the Cooling Fan Defect in the Class Vehicles to Defendants directly and through its dealers. As a result of these reports and its own internal testing, among other things, Defendants were fully aware of the Cooling Fan Defect contained in the Class Vehicles throughout the Class Period. Nevertheless, Defendants actively concealed the existence and nature of the Cooling Fan Defect from Plaintiffs and the other Class Members at the time of purchase or repair and thereafter. Specifically, Defendants:

   a. Failed to disclose and/or actively concealed, at and after the time of purchase or repair, any and all known material defects or material nonconformities of the Class Vehicles, including the Cooling Fan Defect;

   b. Failed to disclose and/or actively concealed, at and after the time of purchase or repair, that the Class Vehicles and their radiator cooling fans were not in good working order, were defective, and were not fit for their intended purpose; and

   c. Failed to disclose and/or actively concealed, at and after the time of purchase or repair, the fact that the Class Vehicles and their radiator cooling fans were defective, despite the fact that Defendants learned of such defects as early as 2013, if not before.

42. Defendants have deprived Class Members of the benefit of their bargain, exposed them all to a dangerous safety Defect, and caused them to expend money at its dealerships or other third-party repair facilities and/or take other remedial measures related to the Cooling Fan Defect contained in the Class Vehicles. Moreover, on information and belief when vehicles are brought to Defendant's dealers for repair, Class Members are provided with ineffective repairs in which one defective component is replaced with another. As a result, Class Members continue to experience the Cooling Fan Defect even after paying for repairs. Because many Class Members, like Plaintiffs, are current owners or lessees who rely on their vehicles on a daily basis, compensation for repairs, related expenses (*e.g.*, towing) and diminution in value is not sufficient. A remedial scheme which also makes available a fix and/or warranty extension covering future failures is necessary to make Class Members whole.

43.     Defendants have not recalled the Class Vehicles to repair the Cooling Fan Defect, have not offered to their customers a suitable repair or replacement of parts related to the Cooling Fan Defect free of charge, and have not offered to reimburse Class Vehicle owners and leaseholders who incurred costs for repairs related to the Cooling Fan Defect.

44.     Class Members have not received the value for which they bargained when they purchased or leased the Class Vehicles.

45.     As a result of the Cooling Fan Defect, the value of the Class Vehicles has diminished, including without limitation the resale value of the Class Vehicles.  Reasonable consumers, like Plaintiffs, expect and assume that a vehicle's engine cooling system is not defective and will not place vehicle occupants at an increased risk of an accident.  Plaintiffs and Class Members further expect and assume that Defendants will not sell or lease vehicles with known safety defects, such as the Cooling Fan Defect, and will disclose any such defect to its customers prior to selling or leasing the vehicle, or offer a suitable repair.  They do not expect that Defendants would fail to disclose the Cooling Fan Defect to them, and continually deny the defect.

## VI.     TOLLING OF THE STATUTE OF LIMITATIONS & NOTICE

46.     Plaintiffs and the other Class Members were not reasonably able to discover the Cooling Fan Defect, despite their exercise of due diligence.

47.     Despite their due diligence, Plaintiffs and the other Class Members could not reasonably have been expected to learn or discover that they were deceived and that material information concerning the Class Vehicles and their defective engine cooling systems was concealed from them.

48.     In addition, even after Class Members contacted Nissan and/or its authorized agents for vehicle repairs concerning the defective nature of the Class Vehicles and their radiator cooling fans they were routinely told by Nissan and/or through their authorized agents for vehicle repairs that the Class Vehicles are not defective.

49.     By failing to report the Cooling Fan Defect to NHTSA as required and consistently touting its attributes, Nissan created a false narrative that permeated the public sphere.  Had Nissan not actively concealed the Cooling Fan Defect in such a manner, dealers would have been forced to

disclose the Defect and/or cease selling the Class Vehicles, and the Defect would otherwise have become publicly known to Plaintiffs and Class Members. By failing to report the Cooling Fan Defect to NHTSA as required and consistently touting its attributes, Nissan created a false narrative that permeated the public sphere. Had Nissan not actively concealed the Cooling Fan Defect in such a manner, dealers would have been forced to disclose the Defect and/or cease selling the Class Vehicles, and the Defect would otherwise have become publicly known to Plaintiffs and Class Members. If Nissan's advertisements or marketing materials had accurately disclosed the Cooling Fan Defect, it is likely that the Defect would have been sufficiently widely reported that Plaintiffs and Class Members would also have learned about the Defect through exposure to such materials, materials viewed at dealerships, and/or in in conversations with salespeople at dealerships prior to purchase.

50. Hence, any applicable statute of limitation, if any, has been tolled by Nissan's knowledge, active concealment, and denial of the facts alleged herein. Nissan is further estopped from relying on any statute of limitation because of its concealment of the defective nature of the Class Vehicles and their engine cooling systems.

51. Plaintiffs provided Defendants with written notice of their claims by letter sent via certified mail on June 29, 2023.

## VII. CLASS ACTION ALLEGATIONS

52. Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated as members of the proposed Classes and Subclasses pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and/or (b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of those provisions.

53. The Classes and Subclasses are defined as:

**Nationwide Class:** All persons or entities who purchased or leased any Class Vehicle in the United States.

**Maryland Subclass:** All members of the Nationwide Class who purchased or any Class Vehicle in the State of Maryland.

**Massachusetts Subclass:** All members of the Nationwide Class who purchased or leased any Class Vehicle in the State of Massachusetts.

**Ohio Subclass:** All members of the Nationwide Class who purchased or leased any Class Vehicle in the State of Ohio.

**Pennsylvania Subclass:** All members of the Nationwide Class who purchased or leased any Class Vehicle in the State of Pennsylvania.

54.     Excluded from the Classes and Subclasses are: (1) Defendants, any entity or division in which Defendants have a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those persons who have suffered personal injuries as a result of the facts alleged herein. Plaintiffs reserve the right to amend the Class definitions, and to add further subclasses, if discovery and further investigation reveal that the Class and subclasses should be expanded or otherwise modified.

55.     **Numerosity:** Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. The Class Members are readily identifiable from, *inter alia*, information and records in Defendants' possession, custody, or control.

56.     **Typicality:** The claims of the representative Plaintiffs are typical of the claims of the Classes and Subclasses in that the representative Plaintiffs, like all Class Members, paid for a Class Vehicle designed, manufactured, and distributed by Defendants which is subject to the Cooling Fan Defect. The representative Plaintiffs, like all Class Members, have been damaged by Defendants' misconduct in that he has incurred or will incur the cost of repairing or replacing his malfunctioning continuously radiator cooling fan and related parts as a result of the Cooling Fan Defect. Further, the factual bases of Defendants' misconduct are common to all Class Members and represent a common thread of fraudulent, deliberate, and/or grossly negligent misconduct resulting in injury to all Class Members.

57.    **Commonality:** There are numerous questions of law and fact common to Plaintiffs and the Classes and Subclasses that predominate over any question affecting only individual Class Members.  These common legal and factual questions include the following:

a.    whether the Class Vehicles suffer from the Cooling Fan Defect;

b.    whether the Cooling Fan Defect constitutes an unreasonable safety hazard;

c.    whether Defendants know about the Cooling Fan Defect and, if so, how long Defendants have known of the Defect;

d.    whether the defective nature of the Class Vehicles' Cooling constitutes a material fact;

e.    whether Defendants had and have a duty to disclose the defective nature of the Class Vehicles' Cooling to Plaintiffs and the other Class Members;

f.    whether Plaintiffs and the other Class Members are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction;

g.    whether Defendants knew or reasonably should have known of the Cooling Fan Defect contained in the Class Vehicles before they sold or leased them to Class Members; and,

h.    Whether Defendants are liable for the consumer protection, common law and warranty claims asserted herein.

58.    **Adequate Representation:** Plaintiffs will fairly and adequately protect the interests of the Class Members.  Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiffs intend to prosecute this action vigorously.

59.    **Predominance and Superiority**: Plaintiffs and the Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class

Members could afford to seek legal redress for Defendants' misconduct. Absent a class action, Class Members will continue to incur damages, and Defendants' misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

## FIRST CAUSE OF ACTION

**Violation of Mass. Gen. Laws Ch. 93A §§ 2, et seq.**
**On behalf of the Nationwide Class or, in the alternative, the Massachusetts Subclass**

60. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

61. Plaintiff Anderson brings this cause of action on behalf of herself and the Nationwide Class or, in the alternative, the Massachusetts Subclass.

62. The Massachusetts Regulation of Business Practice and Consumer Protection Act prohibits unfair and deceptive acts or practices in the conduct of trade or commerce. Mass. Gen. Laws Ch. 93A, § 2(a).

63. Nissan, Plaintiff Anderson, and Class Members are "persons" within the meaning of Ch. 93A, § 1(b).

64. Nissan engaged in "trade" or "commerce" within the meaning of Ch. 93A, § 1(b).

65. Plaintiff Anderson and Class Members are consumers who purchased or leased a Class Vehicle for end use and not for resale.

66. Defendants' conduct, as described above, including omitting and concealing that Class Vehicles contained defective radiator cooling fans, constitutes an unfair and deceptive practice and was likely to mislead a reasonable consumer.

67. A reasonable consumer would consider the quality of the radiator cooling fan in a Class Vehicle, and the defective nature of the radiator cooling fan, to be important and material when making a decision whether to purchase a Class Vehicle. The disclosure of the Cooling Fan Defect would have influenced prospective buyers not to enter into the transaction.

68.     Nissan knew before the time of sale to Plaintiff Anderson and Class Members, that Class Vehicles were produced with defective radiator cooling fans that posed a serious safety threat to drivers, passengers, and everyone else sharing the road with Class Vehicles.  Nissan's knowledge of the Cooling Fan Defect was gained through consumer complaints, warranty claims, knowledge of design and production of the radiator cooling fans, internal product testing, and past experience. The existence and ubiquity of the Defect is illustrated by the numerous publicized consumer complaints, disputes, and  the TSB directed to the Class Vehicles' radiator cooling fans.

69.     Nissan's conduct in concealing the Cooling Fan Defect and failing to offer necessary repairs to Plaintiff Anderson and Class Members so that their vehicles would not suffer from the Defect constituted unfair conduct within the meaning of Ch. 93A, § 1.

70.     Nissan's conduct, as alleged herein, is in violation of at least the following regulations promulgated by the Massachusetts Attorney General under Ch. 93A:

a.     940 C.M.R. § 3.02 (prohibiting, among other things, statements or illustrations used in advertisements which create a false impression of the grade, quality, value, or usability of the product offered);

b.     940 C.M.R. § 3.05(1) (prohibiting claims or representations "made by any means concerning a product which, directly, or by implication, or by failure to adequately disclose additional relevant information, has the capacity or tendency or effect of deceiving buyers or prospective buyers in any material respect");

c.     940 C.M.R. § 3.08(2) (providing that it "shall be an unfair and deceptive act or practice to fail to perform or fulfill any promises or obligation arising under a warranty"); and

d.     940 C.M.R. § 3.16(2) (providing that it is a violation of Ch. 93A, § 2 to "fail to disclose to a buyer or prospective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer to enter into the transaction").

71.     As a direct and proximate result of Nissan's unfair and deceptive conduct, as alleged herein, Plaintiff Anderson and Class Members have suffered injury-in-fact, including the following:

a.     Plaintiff Anderson and Class Members, in purchasing the Class Vehicles, received a car worth less than as represented in that they paid for a car with a fully operable radiator cooling fan, free of defects, but did not receive that which they paid for;

b.     Plaintiff Anderson and Class Members suffered diminution in value of the Class Vehicles due to the existence of the Cooling Fan Defects in their Class Vehicles; and

c.     Plaintiff Anderson and Class Members were faced with the choice of repairing their Class Vehicles at substantial cost and inconvenience or being without their vehicles at substantial cost and inconvenience.

72.     As a result of Defendant's unfair and deceptive conduct in violation of Ch. 93A, Plaintiffs and Class Members have suffered actual damages, including the cost to replace their defective radiator cooling fans which, on information and belief, can cost in excess of $1,000; property damage to the engine itself; the additional cost they paid for a vehicle with a working and defect-free radiator cooling fan (but did not receive); diminution in value of the Class Vehicles; out-of-pocket losses related to repairing, maintaining, and servicing their defective Class Vehicles; costs associated with arranging and obtaining alternative means of transportation; and other incidental and consequential damages recoverable under the law.

73.     Had Plaintiff Anderson and the other Class members been aware of the omitted and misrepresented facts, *i.e.*, that the Class Vehicles they purchased were defective and would cost them thousands of dollars when the radiator cooling fan prematurely failed, Plaintiff Anderson and the other Class members would not have purchased the Class Vehicles or would have paid significantly less for them than they actually paid.

74.     On June 29, 2022, Plaintiff Anderson sent to Nissan a written demand for relief pursuant to Ch. 93A, § 9(3). Nissan confirmed receipt but failed to make a reasonable offer of relief in response to the demand.

75.     Pursuant to Mass. Gen. Laws, Ch. 93A, § 9, Plaintiff Anderson and Class Members seek monetary relief measured as the greater of (a) actual damages in an amount to be determined at trial; and (b) statutory damages in the amount of $25 for each violation.  Because Nissan's conduct was committed willfully and knowingly, Plaintiff Anderson and Class Members are entitled to recover up to three times their actual damages, but no less than two times actual damages.

76.     Plaintiff Anderson and Class Members also seek an order directing Nissan to correct its violations by repairing or replacing  defective radiator cooling fans on all Class Vehicles.

## SECOND CAUSE OF ACTION

**Breach of Implied Warranty, Mass. Gen. Laws Ch. 106 §§ 2-314, et seq.**
**On behalf of the Nationwide Class or, in the alternative, the Massachusetts Subclass**

77.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

78.     Plaintiff Anderson brings this cause of action on behalf of herself and the Nationwide Class, or in the alternative, on behalf of the proposed Massachusetts Subclass.

79.     Class Vehicles are "goods" and Nissan is a "seller" and "merchant" within the meaning of Mass. Gen. Laws Ch. 106, § 2-314.

80.     Plaintiff Anderson is the intended user and true consumer of the Class Vehicle that she purchased from an authorized dealership.  She used her vehicle as intended by Nissan and in a manner that was foreseeable.

81.     The implied warranty of merchantability included with the sale of each Class Vehicle means that Nissan warranted that each Class Vehicle: (a) would pass without objection in trade under the contract description; (b) was fit for the ordinary purposes for which the Class Vehicle would be used; and (c) conformed to the promises or affirmations of fact made on the container or label.

82.     The Class Vehicles are not adequately labeled because their labeling fails to disclose the Defect and does not advise consumers of the existence of the danger prior to experiencing the Cooling Fan Defect firsthand.

83. Nissan's actions have deprived Plaintiff and Class Members of the benefit of their bargain and have caused the Class Vehicles to be worth less than what Plaintiff and other Class Members paid.

84. Plaintiffs and Class Members notified Defendants of the breach within a reasonable time and/or were not required to do so. On June 29, 2023, Plaintiff Anderson sent to Nissan a written demand for relief. Nissan confirmed receipt but failed to make a reasonable offer of relief in response to the demand.

85. Defendants were also on notice of the Cooling Fan Defect from, among other sources, the complaints and service requests they received from Class Members and their dealers.

86. As a direct and proximate result of Nissan's breach of implied warranty, Class Members received goods whose condition substantially impairs their value. Plaintiff Anderson and Class Members have been damaged by the diminished value of their Class Vehicles.

87. Plaintiff Anderson and Class Members are entitled to actual damages, including all incidental and consequential damages, resulting from Nissan's breach of the implied warranty.

### THIRD CAUSE OF ACTION

**Violation of the Maryland Consumer Protection Act, Md. Code Comm. Law §§ 13-101, et seq., On behalf of the Nationwide Class or, in the alternative, the Maryland Subclass**

88. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

89. Plaintiff Wiley brings this cause of action on behalf of herself and on behalf of the Nationwide Class or, in the alternative, the Maryland Subclass.

90. Nissan is a "person" as that term is defined in Md. Code, Comm. Law § 13-101(H).

91. Plaintiff Wiley, and Class Members, are "consumers" as that term is defined in Md. Code, Comm. Law §13-101(C)(1).

92. As described above, Nissan sold vehicles to Plaintiff Wiley and Class members even though the vehicles are defective and pose a safety hazard. Nissan failed to disclose its knowledge of the Cooling Fan Defect and its attendant risks at the point of sale or otherwise. Nissan had the opportunity to disclose the Cooling Fan Defect's existence at the time of sale in January 2017 when

Mr. Wiley purchased his Class Vehicle from Antwerpen Nissan. For example, Nissan could have disclosed the Cooling Fan Defect's existence through Antwerpen Nissan, the Monroney sticker posted on the side of the Nissan Pathfinder that Mr. Wiley purchased, and through Nissan's its ubiquitous Internet, print, television and other media advertising.

93.     Nissan's deceptive acts and practices were willful and knowing because, as alleged above, Nissan has known about the Cooling Fan Defect for many years before it began selling Class Vehicles and chose not to disclose the problem to consumers.

94.     Despite its knowledge of the Cooling Fan Defect, Nissan chose to conceal information about the defect from Plaintiffs and other consumers. This concealment was misleading and unfair in a material respect because the information concealed, if known, would impact the purchasing decision of a reasonable consumer. Had Plaintiff Wiley—or any reasonable consumer—been told that the Class Vehicles contained the Cooling Fan Defect, they would not have purchased their Class Vehicles or would have paid less for them.

95.     Because Nissan did not disclose the Cooling Fan Defect, however, Plaintiff Wiley and Class Members have been deprived of the benefit of their bargain and harmed in that they now own defective and unsafe vehicles that have diminished value compared to the non-defective vehicles they intended to purchase. On information and belief, the average cost of a radiator cooling fan replacement can exceed $1,000. This is a cost that Plaintiffs and Class Members will have to bear as the price of continued ownership of a defective vehicle. The radiator cooling fan is a critical component that is material to the driver experience and safety. The Cooling Fan Defect has therefore also diminished the value of Plaintiffs and Class Members' vehicles.

96.     As a direct and proximate result of Nissan's deceptive acts or practices, Plaintiffs and Class Members have suffered and will continue to suffer actual damages unless Nissan compensates them for the cost of repair or the Class Vehicles' diminished value.

97.     Because Nissan's willful and knowing conduct caused injury to Plaintiffs and Class Members, they seek recovery of actual damages in an amount necessary to repair the Cooling Fan Defect in Class Vehicles or compensate them for the diminished value caused by the existence of the Cooling Fan Defect, discretionary punitive damages, reasonable attorneys' fees and costs, and

an order enjoining Nissan's deceptive conduct, and any other just and proper relief available under Md. Code Comm. Law §§ 13-101, *et seq*.

**FOURTH CAUSE OF ACTION**

**Breach of Implied Warranty, Md. Code Comm. Law §§ 2-314, 2-315**
**On behalf of the Nationwide Class or, in the alternative, the Maryland Subclass**

98.     Plaintiff Wiley re-alleges the paragraphs above as if fully set forth herein.

99.     Plaintiff Wiley brings this cause of action on behalf of herself and on behalf of the proposed Nationwide Class or, in the alternative, the Maryland Subclass.

100.     Plaintiff Wiley and Class Members were the intended beneficiaries of an agreement between Nissan and its authorized dealers for the purchase of the Class Vehicles.  Consumers like Wiley, and not Nissan dealers, are the intended end users of the Class Vehicles and ultimate beneficiaries of warranties that accompany the vehicles.

101.     Class Vehicles are "goods" and Nissan is a "seller" and "merchant" within the meaning of Md. Code Comm. Law § 2-314.

102.     The implied warranty of merchantability included with the sale of each Class Vehicle means that Nissan warranted that each Class Vehicle (a) would pass without objection in trade under the contract description; (b) was fit for the ordinary purposes for which the Class Vehicle would be used; and (c) conformed to the promises or affirmations of fact made on the container or label.

103.     The Class Vehicles are not adequately labeled because their labeling fails to disclose the Defect and does not advise Plaintiffs and Class Members of the existence of the danger prior to experiencing failure firsthand.

104.     Nissan's actions have deprived Plaintiff and Class Members of the benefit of their bargains and have caused Class Vehicles to be worth less than what Plaintiffs and Class Members paid.

105.     As a direct and proximate result of Nissan's breach of implied warranty, Plaintiffs and Class Members received goods whose condition substantially impairs their value. Plaintiff Wiley and Class Members have been damaged by the diminished value of their Class Vehicles.

106.     Plaintiffs and Class Members notified Defendants of the breach within a reasonable time and/or were not required to do so.  On June 29, 2023, Plaintiff Wiley sent to Nissan a written demand for relief and notice of breach..  Nissan confirmed receipt but failed to make a reasonable offer of relief in response to the demand.  By contacting and then bringing his vehicle to a Nissan authorized dealership, moreover, Plaintiff Wiley provided sufficient notice to Nissan of the breach of its breach of the implied warranty of merchantability and any further notice would have been futile and has hereby been waived due to Nissan's steadfast refusal to acknowledge the Cooling Fan Defect in the Class Vehicles and provide an adequate remedy.

107.     Plaintiff Wiley and Class Members are entitled to damages and all incidental and consequential damages resulting from Nissan's breach.

## FIFTH CAUSE OF ACTION

### Negligence
### On behalf of the Nationwide Class, or in the alternative, the Ohio Subclass

108.     Plaintiffs reallege the preceding paragraphs as if fully set forth herein.

109.     Plaintiff Antonios brings this cause of action on behalf of himself and the Nationwide Class or, in the alternative, the Ohio Subclass.

110.     Nissan had a duty to design and manufacture a product that would be safe for its intended and foreseeable uses and users, including the use to which its products were put by Plaintiff and Class Members.  Nissan breached its duties to Plaintiff and Class Members because it was negligent in the design, development, manufacture, and testing of radiator cooling fan as installed in Class Vehicles, and Nissan is responsible for this negligence.

111.     Nissan was negligent in the design, development, manufacture, and testing of radiator cooling fan installed in the Class Vehicles because it knew, or in the exercise of reasonable care should have known, that the vehicles equipped with defective radiator cooling fans—that can cause engine failure—pose an unreasonable risk of serious bodily injury to Plaintiff and Class Members, other motorists, pedestrians, and the public at large.

112.     A finding that Nissan owed a duty to Plaintiffs and Class Members would not significantly burden Nissan.

113. As a direct, reasonably foreseeable, and proximate result of Nissan's failure to exercise reasonable care to inform Plaintiffs and Class Members about the Cooling Fan Defect or to provide appropriate repair procedures for it, Plaintiff and Class Members have suffered damages in that they spent more money than they otherwise would have on Class Vehicles which are of diminished value and require expensive repairs.

114. Plaintiff and Class Members could not have prevented the damages caused by Nissan's negligence through the exercise of reasonable diligence. Neither Plaintiff nor the Ohio Class contributed in any way to Nissan's failure to provide appropriate notice and repair procedures.

115. Plaintiff and Class Members seek to recover the damages caused by Nissan. Because Nissan acted fraudulently and with wanton and reckless misconduct, Plaintiff also seeks an award of punitive damages.

## SIXTH CAUSE OF ACTION

**Breach of Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01, et seq.**
**On behalf of the Nationwide Class or, in the alternative, the Ohio Subclass**

116. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

117. Plaintiff Antonios brings this cause of action on behalf of himself and the Nationwide Class or, in the alternative, the Ohio Subclass.

118. Nissan is a "supplier," as defined by Ohio Rev. Code § 1345.01.

119. Plaintiff Antonios and Class Members are "consumers," as defined by Ohio Rev. Code § 1345.01.

120. As a result of placing a defective product into the stream of commerce, Nissan has breached its implied warranty in tort, which is an unfair and deceptive act as defined in Ohio Rev. Code § 1345.09(B).

121. Nissan has committed unfair and deceptive acts, in violation of Ohio's Consumer Sales Practices Act, by knowingly placing into the stream of commerce Class Vehicles equipped with cooling systems that result in, among other problems, sudden and unexpected failure of the vehicles' power.

122.     Moreover, Nissan has committed unfair, deceptive, and unconscionable acts by knowingly concealing the defect in the Class Vehicles, failing to inform Plaintiff Antonios and Class Members of this defect, and in the following ways:

a.     At the time of sale, Nissan knowingly misrepresented and intentionally omitted and concealed material information regarding the Class Vehicles by failing to disclose to Plaintiff Antonios and Class Members the known defects in the Class Vehicle's cooling systems and the known risks associated therewith.

b.     Thereafter, Nissan failed to disclose the defects to Plaintiff Antonios and the Class Members, either through warnings or recall notices, and/or actively concealed from them the fact that the Class Vehicles' cooling systems were defective, even though Nissan knew of such defects at the time of manufacturing, during pre-market testing or, at the latest, when Nissan began its post-production investigation that resulted in Technical Service Bulletins related to the cooling fan.

c.     Defendant forced Plaintiff Antonios and Class Members to expend sums of money at its dealerships and elsewhere to repair and/or replace the defective cooling systems on the Class Vehicles, despite Nissan's prior knowledge of the defects at the time of purchase.

d.     Additionally, Nissan engaged in materially misleading deceptive acts and practices by replacing failing cooling systems with equally defective units and denying the existence of and refusing to repair the widely known problems with the vehicles without a particular code appearing in the vehicles' computers.

e.     Furthermore, Nissan engaged in materially misleading and deceptive acts by continuing to sell the Class Vehicles to the consuming public and to represent that these vehicles were in good working order, merchantable, and not defective, despite Defendant's knowledge that the vehicles would not perform

as intended, represented, and warranted and that the above-described defects would cause purchasers to incur significant out-of-pocket costs and expenses.

123.	This conduct is and was deceptive and false and constitutes an unconscionable, unfair, and deceptive act or practice in that Nissan has, through knowing, intentional, and material omissions, concealed the true defective nature of the Class Vehicles' cooling systems.

124.	By making these misrepresentations of fact and/or material omissions to prospective customers while knowing such representations to be false, Nissan misrepresented and/or knowingly and intentionally concealed material facts in breach of its duty not to do so.

125.	Members of the public were deceived by Nissan's failure to disclose and could not discover the defect themselves before suffering their injuries.

126.	The Ohio Attorney General has made available for public inspection prior state court decisions which have held that acts and omissions similar to kinds alleged in this Complaint, including, but not limited to, the concealment and/or non-disclosure of a dangerous defect, constitute deceptive sales practices in violation of Ohio's Consumer Sales Practices Act. These cases include, but are not limited to, the following:

a.	*Mason v. Mercedes Benz USA, LLC* (OPIF #10002382);

b.	*State ex rel. Betty D. Montgomery v. Ford Motor Co.*, (OPIF #10002123);

c.	*State ex rel. Betty D. Montgomery v. Bridgestone/Firestone, Inc.*, (OPIF #10002025);

d.	*Bellinger v. Hewlet-Packard Co.*, No. 20744, 2002 Ohio App. LEXIS 1573 (Ohio Ct. App. Apr. 10, 2002) (OPIF #10002077);

e.	*Borror v. MarineMax of Ohio*, No. OT-06-010, 2007 Ohio App. LEXIS 525 (Ohio Ct. App. Feb. 9, 2007) (OPIF #10002388);

f.	*State ex rel. Jim Petro v. Craftmatic Organization, Inc.*, (OPIF #10002347);

g.	*Mark J. Cranford, et al. v. Joseph Airport Toyota, Inc.*, (OPIF #10001586);

h.	*State ex rel. William J. Brown v. Harold Lyons*, (OPIF #10000304);

i.	*Brinkman v. Mazda Motor of America, Inc.*, (OPIF #10001427);

j.	*Khouri v. Don Lewis*, (OPIF #100001995);

k.      *Mosley v. Performance Mitsubishi aka Automanage*, (OPIF #10001326);

l.      *Walls v. Harry Williams dba Butch's Auto Sales*, (OPIF #10001524);

m.     *Brown v. Spears*, (OPIF #10000403); and

n.      *Williams v. Am. Suzuki Motor Corp.*, 2008 Ohio 3123; 2008 WL 2571584 (June 23, 2008).

127.    Nissan committed these and other unfair and deceptive acts in connection with the marketing and sale of the Class Vehicles.

128.    As a direct and proximate result of these unconscionable, unfair, and deceptive acts or practices, Plaintiff Antonios and Ohio Class Members have been damaged because they: purchased Class Vehicles they otherwise would not have purchased, paid more for Class Vehicles than they otherwise would have paid, paid for cooling system diagnoses, repairs, and replacements, towing, and/or rental cars, and are left with Class Vehicles of diminished value and utility because of the defect. Meanwhile, Nissan has sold more Class Vehicles than it otherwise could and charged inflated prices for Class Vehicles, thereby unjustly enriching itself.

129.    Plaintiff Antonios and Class Members seek restitution of the substantial sums of money they expended, including to replace their vehicle's defective cooling systems, which Nissan knew about prior to the sale of the Class Vehicles.

130.    Plaintiff Antonios and Class Members also seek appropriate equitable relief, including an order requiring Nissan to adequately disclose and remediate the Cooling Fan Defect and enjoining Nissan from incorporating the defective cooling systems into its vehicles in the future.

131.    Nissan is liable to Plaintiff Antonios and the other Class Members for compensatory damages, injunctive/equitable relief, and attorneys' fees pursuant to Ohio Rev. Code § 1345.09.

<u>**SEVENTH CAUSE OF ACTION**</u>

**Breach of Implied Warranty, Ohio Rev. Code Ann. § 1302.27**
**On behalf of the Nationwide Class or, in the alternative, the Ohio Subclass**

132.    Plaintiffs re-allege the paragraphs above as if fully set forth herein.

133.    Plaintiff Antonios brings this cause of action on behalf of himself and the Nationwide Class or, in the alternative, the Ohio Subclass.

134. Plaintiff Antonios and Class Members were the intended beneficiaries of an agreement between Nissan and its authorized dealers for the purchase of the Class Vehicles. Consumers like Antonios, and not Nissan dealers, are the intended end users of the Class Vehicles and ultimate beneficiaries of warranties that accompany the vehicles.

135. The implied warranty of merchantability included with the sale of each Class Vehicle means that Nissan warranted that each Class Vehicle (a) would pass without objection in trade under the contract description; (b) was fit for the ordinary purposes for which the Class Vehicle would be used; and (c) conformed to the promises or affirmations of fact made on the container or label.

136. The Class Vehicles are not adequately labeled because their labeling fails to disclose the Defect and does not advise Plaintiffs and Class Members of the existence of the danger prior to experiencing failure firsthand.

137. Nissan's actions have deprived Plaintiff and Class Members of the benefit of their bargains and have caused Class Vehicles to be worth less than what Plaintiff and Class Members paid.

138. As a direct and proximate result of Nissan's breach of implied warranty, Plaintiffs and Class Members received goods whose condition substantially impairs their value. Plaintiff Antonios and Class Members have been damaged by the diminished value of their Class Vehicles.

139. Plaintiffs and Class Members notified Defendants of the breach within a reasonable time and/or were not required to do so. By contacting and then bringing his vehicle to a Nissan authorized dealership, Plaintiff Antonios provided sufficient notice to Nissan of the breach of the implied warranty of merchantability and any further notice would have been futile and has hereby been waived due to Nissan's steadfast refusal to acknowledge the Cooling Fan Defect in the Class Vehicles and provide an adequate remedy. Plaintiff Antonios further notified Nissan directly of the breach by letter on June 29, 2023.

140. Plaintiff Antonios and Class Members are entitled to damages, including all incidental and consequential damages resulting from Nissan's breach.

## EIGHTH CAUSE OF ACTION

**Violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. § 201-1, et seq. on behalf of the Nationwide Class, and alternatively, the Pennsylvania Subclass**

67.     Plaintiffs re-allege the paragraphs above as if fully set forth herein.

68.     Plaintiff Balsam brings this cause of action on behalf of himself and the Nationwide Class or, alternatively, the Pennsylvania Subclass.

69.     Defendants knew at the time of sale that the Class Vehicles' radiator cooling fans suffered from an inherent safety defect, would fail prematurely and were not suitable for their intended use.

70.     Defendants were under a duty to Plaintiffs and the Class Members to disclose the defective nature of the Class Vehicles' radiator cooling fans and the associated repair costs because:

  a.  Defendants were in a superior position to know the true state of facts about the safety defect contained in the Class Vehicles' radiator cooling fans;

  b.  Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that their radiator cooling fans have a dangerous safety defect until after they purchased the Class Vehicles;

  c.  Defendants knew that Plaintiffs and the Class Members could not reasonably have been expected to learn about or discover the Cooling Fan Defect; and

  d.  Defendants actively concealed the defective nature of the Class Vehicles' radiator cooling fans from Plaintiffs and Class Members at the time of sale and thereafter.

71.     By failing to disclose the Cooling Fan Defect, Defendants knowingly and intentionally concealed material facts regarding the Cooling Fan Defect and breached their duty not to do so.

72.     The facts concealed or not disclosed by Defendants to Plaintiffs and Class Members are material because a reasonable consumer would have considered them to be important in deciding whether to purchase the Class Vehicles, or to pay less for them.  Had Plaintiffs and other

Class Members known that the Class Vehicles' radiator cooling fans were defective, they would not have purchased the Class Vehicles or would have paid less for them.

73.     Plaintiffs and Class Members are reasonable consumers who do not expect that their vehicles will suffer from a Cooling Fan Defect.

74.     As a direct and proximate result of Defendants' unfair or deceptive acts and practices, Plaintiffs and Class Members justifiably relied on Defendants' misrepresentations and omissions, have been harmed and have suffered and will continue to suffer actual damages in that the Class Vehicles and their radiator cooling fans are defective and require repairs or replacement. The Class Vehicles are worth less than they would be if they had a non-defective radiator cooling fans.

75.     Plaintiffs seek actual damages, restitution, statutory and punitive damages, attorney fees, costs, and any other relief that the Court deems just and necessary due to Defendants' failure to rectify or agree to adequately rectify its violations as detailed above.

## <u>NINTH CAUSE OF ACTION</u>
### Breach of Implied Warranty of Merchantability
### 13 Pa. Cons. Stat. § 2101, et seq. on behalf of the Nationwide Class, and alternatively, the Pennsylvania Subclass

76.     Plaintiffs incorporate and reallege each of the preceding paragraphs as set forth herein.

77.     Plaintiff Balsam brings this claim individually and on behalf of the Nationwide class, or alternatively, the Pennsylvania Subclass.

78.     Plaintiff and members of the Pennsylvania Subclass purchased or leased their Class Vehicle from Defendants and by and through Defendants' agents for retail sales or were otherwise expected to be the eventual purchasers of the Class Vehicle from a third party.

79.     Nissan is and at all relevant times has been a merchant and seller of motor vehicles as defined under the Uniform Commercial Code, as adopted by the state of Pennsylvania (the "Pennsylvania Uniform Commercial Code" or the "Pennsylvania UCC"). 13 Pa. Cons. Stat. § 2101, et seq.

80.     Defendants are and at all relevant times have been lessors of motor vehicles as defined under the Pennsylvania Uniform Commercial Code.

81.     The Class Vehicles at issue in this Complaint are and were at all times relevant goods within the meaning of the Pennsylvania UCC.

82.     Defendants impliedly warranted that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used.

83.     However, the Class Vehicles contained a defective radiator cooling fan, and, as such, they were not fit for the ordinary purposes for which vehicles are used—i.e., providing safe and reliable transportation. Instead, the Class Vehicles contain the Cooling Fan Defect and present an undisclosed safety risk to drivers and occupants. Thus, Defendants breached their implied warranty of merchantability.

84.     As a direct and proximate cause of Defendants' breach of the implied warranty of merchantability, Plaintiff, Members of the Nationwide Class, and Members of the Pennsylvania Subclass have suffered actual and compensable damages.

## TENTH CAUSE OF ACTION

**Breach of Written and Implied Warranties Under Magnuson-Moss Warranty Act,
15 U.S.C. §§ 2301, et seq.
On behalf of the Nationwide Class or, in the alternative, the Maryland, Massachusetts,
Ohio, and Pennsylvania Subclasses**

141.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

142.     Plaintiffs Anderson, Balsam, Wiley, and Antonios bring this cause of action on behalf of themselves and on behalf of the Nationwide Class or, in the alternative, the Maryland, Massachusetts, Ohio, and Pennsylvania Subclasses.

143.     Plaintiffs and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

144.     Defendants are "supplier(s)" and "warrantor(s)" within the meaning of 15 U.S.C. §§ 2301(4)-(5).

145.     The Class Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

146.    Defendant's implied warranty is an "implied warranty" within the meaning of 15 U.S.C. § 2301(7).

147.    Defendants breached the implied warranties by virtue of the above-described acts.

148.    Plaintiffs and Class Members notified Defendants of the breach within a reasonable time and/or were not required to do so.  Defendants were also on notice of the Cooling Fan Defect from, among other sources, the complaints and service requests they received from Class Members and Nissan dealers.

149.    Defendants' breach of the implied warranties deprived Plaintiffs and Class Members of the benefits of their bargains.

150.    As a direct and proximate result of Defendants' breach of the implied warranties, Plaintiffs and the other Class Members sustained damages and other losses in an amount to be determined at trial.  Defendants' conduct damaged Plaintiffs and the other Class Members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, and costs, including statutory attorney fees and/or other relief as appropriate.

## **TENTH CAUSE OF ACTION**

**Unjust Enrichment**
**On behalf of the Nationwide Class or, in the alternative, Ohio, Maryland, Massachusetts, and Pennsylvania Subclasses**

151.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

152.    Plaintiffs bring this cause of action on behalf of themselves and on behalf of the Nationwide Class or, in the alternative, the Ohio, Maryland, Massachusetts, and Pennsylvania Subclasses.

153.    As described above, Nissan sold vehicles to class members even though the vehicles are defective and pose a safety hazard, and Nissan failed to disclose its knowledge of the Cooling Fan Defect and its attendant risks at the point of sale or otherwise.

154.    As a result of its fraudulent acts and omissions related to the Cooling Fan Defect, Nissan charged Plaintiffs and Class Members more than it otherwise could have for Class Vehicles, obtaining monies which rightfully belong to Plaintiffs and Class Members.

155. Nissan appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiffs and the proposed Class Members, who, without knowledge of the Defect, paid a higher price for their vehicles than those vehicles were worth.

156. It would be inequitable and unjust for Nissan to retain these wrongfully obtained profits.

157. Nissan's retention of these wrongfully obtained profits would violate the fundamental principles of justice, equity, and good conscience.

158. Each Plaintiff and the proposed Classes are entitled to restitution of the profits Nissan unjustly obtained, plus interest.

## ELEVENTH CAUSE OF ACTION

### Fraudulent Omission
### On behalf of the Nationwide Class or, in the alternative, Ohio, Maryland, Massachusetts, and Pennsylvania Subclasses

159. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

160. Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class or, in the alternative, the Ohio, Maryland, Massachusetts, and Pennsylvania Subclasses.

161. Defendants knew that the Class Vehicles suffered from an inherent defect, were defectively designed and/or manufactured and were not suitable for their intended use.

162. Defendants concealed from and failed to disclose to Plaintiffs and Class Members the defective nature of the Class Vehicles and their radiator cooling fans. Defendants knew that the radiator cooling fan is one of the Class Vehicle's primary components and is fundamental to the safe and reliable operation of the Class Vehicles, like an engine. The radiator cooling fans malfunction has caused engine failure and Plaintiffs, like any reasonable consumer, would not have knowingly purchased vehicles with defective radiator cooling fans. The Cooling Fan Defect thus went to the essence of the purchase transaction.

163. Defendants had multiple opportunities to disclose the Cooling Fan Defect to Plaintiffs and Class Members. Defendants could have included a disclosure on the Monroney label that accompanies all new vehicles. Defendants also could have included a disclosure on the Nissan

website and, in the Press Kit that Nissan typically releases in connection with each new model year vehicle, as well as in Nissan's other advertising across the Internet, television and print. Nissan could also have instructed its dealers to post and advisement concerning the Cooling Fan Defect on all Nissan vehicles offered for sale. As discussed above, if Nissan's advertisements or marketing materials had accurately disclosed the Cooling Fan Defect, it is likely that the Defect would have been sufficiently widely reported that Plaintiffs and Class Members would also have learned about the Defect through exposure to such materials, materials viewed at dealerships, and/or in conversations with salespeople at dealerships prior to purchase.

164. Defendants were under a duty to Plaintiffs and Class Members to disclose the defective nature of the Class Vehicles' radiator cooling fan because:

      a.     Defendants were in a superior position to know the true state of facts about the safety defect in the Class Vehicles' radiator cooling fans;

      b.     Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that their radiator cooling fans have a dangerous safety defect until after they purchased or leased the Class Vehicles;

      c.     Defendants were aware that Plaintiffs and Class Members were the intended purchasers of the Class Vehicles

      d.     Defendants knew that Plaintiffs and the Class Members could not reasonably have been expected to learn about or discover the Cooling Fan Defect prior to purchase or lease; and

      e.     Defendants actively concealed the defective nature of the Class Vehicles' radiator cooling fans from Plaintiffs and Class Members at the time of sale and thereafter.

165. The facts concealed or not disclosed by Defendants to Plaintiffs and the other Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease Defendants' Class Vehicles or pay a lesser price for them. Had Plaintiffs and Class Members known about the defective nature of the Class Vehicles' radiator cooling fans, they would not have purchased or leased them, or would have paid less for them.

166. Defendants concealed or failed to disclose the true nature of the design and/or manufacturing defects contained in the Class Vehicles' radiator cooling fans in order to induce Plaintiffs and Class Members to act thereon. Plaintiffs and the other Class Members justifiably relied on Defendants' omissions to their detriment.

167. Defendants continued to conceal the defective nature of the Class Vehicles' radiator cooling fans even after Class Members began to report the problems. Indeed, Defendants continue to cover up and conceal the true nature of the problem today.

168. As a direct and proximate result of Defendants' misconduct, Plaintiffs and Class Members have suffered and will continue to suffer actual damages, including the expected cost to replace their defective radiator cooling fans which, on information and belief, can cost in excess of $1,000; property damage to the engine itself; the additional cost they paid for a vehicle with a working and defect-free radiator cooling fan (but did not receive); diminution in value of the Class Vehicles; out-of-pocket losses related to repairing, maintaining, and servicing their defective Class Vehicles, costs associated with arranging and obtaining alternative means of transportation, and other incidental and consequential damages recoverable under the law.

169. Plaintiffs and Class Members are entitled to actual damages, exemplary damages, appropriate equitable relief as well as attorneys' fees and expenses as a result of Defendants' fraudulent conduct.

## RELIEF REQUESTED

170. Plaintiffs, on behalf of themselves and all others similarly situated, request that the Court enter judgment against Defendant, and issue an order providing the following relief:

    a.    Certifying the proposed Class and Subclasses, designating Plaintiffs as a named representatives of the Classes, and designating the undersigned as Class Counsel;

    b.    A declaration that Nissan is financially responsible for notifying all Class Members about the defective nature of the radiator cooling fans in the Class Vehicles;

c.      An order directing Defendants to provide notice, in a form pre-approved by the counsel identified below, to all current owners or lessees of the Class Vehicles, and in the said notice offer to replace the defective radiator cooling fans contained in every Class Vehicle with a non-defective radiator cooling fan;

d.      An order directing Defendants to provide notice, in a form pre-approved by the counsel identified below, to all current owners and lessees of the Class Vehicles, of an appropriate warranty extension of the Class Vehicles' radiator cooling fans and related components;

e.      An order directing Defendants to offer reimbursement to all current and former owners and lessees of the Class Vehicles, for all expenses already incurred as a result of the Cooling Fan Defect, including but not limited to repairs, diagnostics, and any other consequential and incidental damages (*e.g.* towing charges, vehicle rentals, etc.);

f.      An order directing Defendants to immediately cease the sale and leasing of the Class Vehicles at authorized Nissan dealerships nationwide without first notifying the purchasers of the Cooling Fan Defect, and otherwise immediately cease to engage in the violations of law as set forth above;

g.      Damages and restitution in an amount to be proven at trial;

h.      Any and all remedies provided pursuant to the state consumer protection laws, implied warranty laws, the Magnuson-Moss Warranty Act and under common law fraud and unjust enrichment;

i.      An award to Plaintiffs and the Class of compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

j.      That Defendants disgorge, for the benefit of the Class, all or part of the ill-gotten profits they received from the sale or lease of the Class Vehicles, and/or make full restitution to Plaintiffs and Class Members;

k.      An award of attorneys' fees and costs, as allowed by law;

l.    An award of pre-judgment and post-judgment interest, as allowed by law;

m.    Leave to amend the Complaint to add further subclasses and to conform to the evidence produced at trial; and,

n.    Such other relief as may be appropriate under the circumstances.

## DEMAND FOR A JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable as of right.

DATED:  March 6, 2024                    Respectfully submitted,


                                        /s/ J. Gerard Stranch, IV
                                        J. Gerard Stranch, IV (TN BPR 23045)
                                        Michael C. Iadevaia (TN BPR 041622)
                                        **STRANCH, JENNINGS & GARVEY PLLC**
                                        223 Rosa L. Parks Avenue, Suite 200
                                        Nashville, TN 37203
                                        Telephone: (615) 254-8801
                                        Facsimile: (615) 255-5419
                                        gstranch@stranchlaw.com

                                        Mark Greenstone (*pro hac vice forthcoming*)
                                        Benjamin Donahue (*pro hac vice forthcoming*)
                                        **GREENSTONE LAW APC**
                                        1925 Century Park East, Suite 2100
                                        Los Angeles, CA 90067
                                        Telephone: (310) 201-9156
                                        Facsimile: (310) 201-9160
                                        mgreenstone@greenstonelaw.com
                                        bdonahue@greenstonelaw.com


                                        *Attorneys for Plaintiffs and the Proposed Class*